UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| JAMES R. MCCLELLAN,<br><br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No. 16-10593<br>Honorable Laurie J. Michelson<br>Magistrate Judge David R. Grand |

**OPINION AND ORDER ADOPTING IN PART REPORT AND RECOMMENDATION [17], GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [11], AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [14]**

Plaintiff James McClellan suffers from posttraumatic stress disorder and major depressive disorder and believes that his cognitive (and physical) deficits preclude him from performing any full-time work. As such, he has sought disability benefits from the Social Security Administration. The Commissioner of Social Security denied benefits after an administrative law judge (acting on behalf of the Commissioner) found that McClellan can perform certain jobs. McClellan filed suit to challenge that determination. All pretrial matters, including the parties' motions for summary judgment, were referred to Magistrate Judge David R. Grand. He recommends that this case be remanded primarily because the ALJ did not properly assess the opinions of McClellan's two treating doctors, both of whom indicated that McClellan could not perform any full-time work. The Commissioner objects to the Magistrate Judge's recommendation. For the reasons that follow, the Court will remand this case for further adjudication.

**I.**

McClellan, now 45 years old, served in the armed forces for about 20 years and has also worked as a financial consultant. (Tr. 74, 418–19.) In 2009, while deployed in Afghanistan, McClellan was carrying an 80-pound pack, his firearm, and some bags up a hill and fell backward. (Tr. 61.) He might have (though the evidence suggests probably not) suffered a traumatic brain injury. (*See* Tr. 683, 764, 1009.) In 2014—if not earlier—McClellan was diagnosed with posttraumatic stress disorder and severe, major depressive disorder. (Tr. 415.) Among the events supporting those diagnoses were falling off a ship and being caught in a safety net before hitting the ocean, being within 50 feet of a pipe-bomb explosion, riding in a Blackhawk helicopter under fire, and serving as a pallbearer for eighteen fellow soldiers. (Tr. 64, 420–21.) As a result of his TBI or PTSD and depression (or both) McClellan suffers from cognitive deficits, including difficulties in verbal reasoning, verbal comprehension, and processing speed. (Tr. 1009.) Dr. Hisanori Hasegawa, a neurologist who treated McClellan for severe headaches, has opined that McClellan is "clinically disabled." (Tr. 928.) After treating McClellan's PTSD and depression for almost a year, Lisa Porta, a licensed clinical social worker, and Dr. Thomas Zatolokin, a psychiatrist, opined that McClellan had many severe cognitive limitations, including "[n]o useful ability" to understand and remember very short and simple instructions. (*See* Tr. 839, 869, 1014.) The Department of Veterans Affairs gave McClellan a 100% disability rating based on his TBI, PTSD, and depression. (Tr. 362.)

McClellan believes that his cognitive and physical limitations prevent him from maintaining any full-time job. As such, in 2014 he applied for disability benefits from the Social Security Administration. (Tr. 13.) Initially, McClellan was awarded benefits. (*See* Tr. 110.) But after a fraud investigation revealed that he was able to follow directions to locate and retrieve a

2

20-pound item at Home Depot, shop at other stores, go down water slides, gamble at casinos (including table games), and go out to dinner multiple times with family and friends (Tr. 860–61, 863), the award of benefits was overruled (Tr. 132–35).[1]

McClellan challenged that decision. Administrative Law Judge Kendra Kleber, relying significantly on the fraud-investigation report, concluded that McClellan was not under a "disability" as that term is used in the Social Security Act. (*See* Tr. 13–30.) In reaching this conclusion, she assigned Dr. Hasegawa's opinion "little weight" because it was "inconsistent with the record as a whole." (Tr. 24.) And she assigned the joint Porta-Zatolokin opinion "little weight" because it was "grossly inconsistent with the record as a whole," including the fraud-investigation report. (Tr. 25.) As for the Department of Veterans Affairs' disability rating, the ALJ stated that the VA had "its own rules for determining disability" and that, while she had considered the VA's opinion, "the record does not support a finding of disabled." (Tr. 24.) After further administrative appeal was denied, the ALJ's disability determination became the final decision of the Commissioner of Social Security. (Tr. 1.)

McClellan filed this lawsuit to challenge the Commissioner's decision. Both he and the Commissioner filed motions for summary judgment in support of their positions. (R. 11, 14.) These motions were referred to Magistrate Judge David R. Grand for a report and recommendation, which he has issued. (R. 17.)

The Magistrate Judge recommends remanding this case for three reasons. (R. 17.) For one, he says that substantial evidence does not support the ALJ's finding that the Hasegawa

---

[1] Notably, in support of his application for benefits, McClellan had stated, "I cannot put my boots or pants on," "I use a cane/walker daily," "I always have assistance [shopping;] my wife does all the shopping – I am unable to walk," "I do not shop, go out with friends[.] I like staying home," "I can only lift 5 lbs. stand only 3-5 minutes," and "I cannot focus enough to follow directions." (Tr. 265–72.)

opinion and the Porta-Zatolokin opinion were "inconsistent with the record as a whole." (R. 17, PID 1145.) Second, the ALJ violated a significant procedural rule by not adequately explaining why she gave these two opinions little credence. (R. 17, PID 1146.) Third, the Magistrate Judge found that the ALJ failed to adequately consider the VA's disability rating. (R. 17, PID 1147–48; *see also* Tr. 362.) The Magistrate Judge thus recommends that this Court send this case back to the ALJ so she can further consider and further explain her consideration of the Hasegawa opinion, the Porta-Zatolokin opinion, and the VA's disability rating. (R. 17, PID 1148.)

The Commissioner objects to this recommendation. (R. 18.) She asserts that the Hasegawa opinion is entitled to "no weight whatsoever" because it merely states that McClellan was disabled (which is a determination that the law reserves for the Commissioner, not a physician) and because Dr. Hasegawa merely adopted McClellan's own assessment of his ability to work. (R. 18, PID 1152.) The Commissioner also argues that the Porta-Zatolokin opinion was "not entitled to any significant weight" because Porta and Dr. Zatolokin failed to support their severe functional limitations with anything other than a listing of medical diagnoses. (R. 18, PID 1153.) The Commissioner further argues that, contrary to the Magistrate Judge's determination, the ALJ provided good reasons for discounting the two treating-source opinions, primarily the fraud-investigation report. (*See* R. 18, PID 1154–60.) As for the VA's rating, the Commissioner argues that when the ALJ's narrative is read as a whole, it is clear that the ALJ could not accept the rating "because it was inconsistent with the [fraud-investigation] report and [McClellan's] normal mental status exams." (R. 18, PID 1160–61.) Thus, the Commissioner concludes, this Court should reject the Magistrate Judge's recommendation and instead affirm her conclusion that McClellan is not disabled under the Social Security Act. (R. 18, PID 1162.)

## II.

When a federal magistrate judge reviews an ALJ's disability determination, the question "is limited to whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). "The substantial-evidence standard is met if a reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

When, as here, the Commissioner objects to a finding of the magistrate judge, this Court reviews that finding *de novo*. *See* 28 U.S.C. § 636(b). Thus, this Court will assess whether the ALJ's treatment of the Hasegawa opinion, the Porta-Zatolokin opinion, and the VA's rating was based on a correct application of the law and was supported by substantial evidence. *See Blakley*, 581 F.3d at 405.

## III.

### A.

In view of the Commissioner's objections and this Court's review of the record, the Court will not adopt the Magistrate Judge's finding that the ALJ lacked substantial evidence for assigning the Hasegawa and Porta-Zatolokin opinions little weight.

Starting with Dr. Hasegawa's opinion, the Magistrate Judge found that it was supported by the fact that Dr. Hasegawa regularly increased McClellan's medication and that the neurologist never indicated that McClellan was malingering. (R. 17, PID 1146.) The Magistrate Judge also found that Dr. Hasegawa's opinion was supported by "objective testing." (*Id.*)

This Court questions whether Dr. Hasegawa's opinion is well supported by objective testing. It is true that, at one of the four (or so) times he saw McClellan, Dr. Hasegawa referenced "abnormal" electroencephalogram findings: "focal slow activity in the left temporal

5

structure." (Tr. 946.) And it is true that Dr. Hasegawa referred McClellan for a speech-language evaluation with Glen Laffy, M.S. (Tr. 1017.) But when it came to opining on McClellan's ability to work, it appears that Dr. Hasegawa relied heavily on McClellan's self-assessment:

> Each time [McClellan] took the medication it lasted for two hours of headache free and then after that the headache symptoms come back, again. He said that he has difficulty in concentration and difficulty in maintaining quality of life. He is pretty much unable to find a job for this problem. *So in that sense*, he is clinically disabled by the above symptom of headache, possible seizure, as well as anger attack, as he has service connected closed head injury.

(Tr. 928 (emphasis added).) Dr. Hasegawa did not reference the EEG or the speech-language evaluation in his opinion. (The speech-language evaluation was on the very day that Dr. Hasegawa gave his opinion and it is unclear if it had been completed at the time of Dr. Hasegawa's opinion. (*Compare* 928, *with* Tr. 1018.)) If Dr. Hasegawa merely adopted what McClellan reported, the opinion would not be entitled to significant weight. *See Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 629 (6th Cir. 2016) ("The ALJ also properly discounted Dr. Chapman's opinion because it relied heavily on Kepke's self-reporting, and seemed to uncritically accept as true most, if not all, of what [Kepke] reported." (internal quotation marks omitted)).

Moreover, as the Commissioner has objected, Dr. Hasegawa did not provide any functional limitations for McClellan (e.g., that McClellan could not maintain concentration for more than 20 minutes at a time), but instead simply gave a bottom line: that McClellan was "disabled." Yet disability under the Social Security Act is a legal determination and so a treating physician's opinion on the matter, while it must be considered, is not entitled to special deference. *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007) ("20 C.F.R. § 404.1527(e)(1) explicitly states that the conclusion of disability is reserved to the Secretary . . . . Subsection (e)(3) further elaborates that no 'special significance' will be given to opinions of disability, even

6

if they come from a treating physician."); *see also Cosma v. Comm'r of Soc. Sec.*, 652 F. App'x 310, 311 (6th Cir. 2016) ("The ALJ reasonably gave no weight to Dr. Dhar's opinion because her conclusion that Cosma is totally disabled is a determination reserved to the Commissioner."); *Stiltner v. Comm'r of Soc. Sec.*, 244 F. App'x 685, 689 (6th Cir. 2007) ("Because Dr. Bansal's repeated statements that Stiltner was 'totally disabled' were unaccompanied by objective medical evidence, the ALJ did not err by according those statements little weight.").

As for the Porta-Zatolokin opinion, the Court agrees with the Magistrate Judge that Dr. Zatolokin often increased McClellan's half-dozen mental-health medications and that Porta thought McClellan's PTSD made him a candidate for inpatient treatment. And neither noted malingering. Further, their treatment notes are rife with McClellan's reports of severe difficulty sleeping, including terrible nightmares. (*See e.g.*, Tr. 843 ("My wife tells me she see me thrashing my legs when I sleep and that I talk in my sleep saying things like, 'No, no, no'. My son wrote a paper for school saying, 'My dad never came back from Afghanistan'.").) These facts lend credibility to their opinion.

On the other hand, the Magistrate Judge also thought the Porta-Zatolokin opinion was supported by "objective evidence." (R. 17, PID 1146.) But it is unclear what objective evidence Porta and Dr. Zatolokin relied on to find that McClellan had very severe functional limitations, including "[n]o useful ability" to understand and remember "very short and simple instructions" and "[n]o useful ability" to complete a normal workday without interruptions from psychological symptoms. (Tr. 1014–15.) Their check-box opinion merely lists McClellan's diagnoses—not any objective testing. (Tr. 1016.) True, both Porta and Dr. Zatolokin conducted PHQ-9 and PCL-L evaluations. (*See e.g.*, Tr. 809–12, 847–49.) But those assessments were primarily based on McClellan's subjective view of his symptoms (e.g., "[Q.] Loss of interest in activities that you

7

used to enjoy? [A.] Extremely.") (*See* Tr. 809–12, 847–49.) Notably too, Porta and Dr. Zatolokin opined that McClellan had "[n]o useful ability" to maintain attention and concentration for extended periods; but on all but one occasion that Dr. Zatolokin saw McClellan, he wrote, "concentration and attention appeared to be within normal limits." (Tr. 939, 949, 954.)

The Magistrate Judge also found that the Hasegawa and Porta-Zatolokin opinions were "in agreement" with the evaluations of Dr. Richard Coder, a psychologist,[2] and Karl Goler, M.D. (R. 17, PID 1139–40, 1146.) He also suggested that an evaluation by Adrienne West, Ph.D., and the speech-language evaluation by Laffy supported the Hasegawa and Porta-Zatolokin opinions. (*See* R. 17, PID 1141–42, 1145.)

This Court finds that while these four assessments could be read to support the Hasegawa and Porta-Zatolokin opinions, certain portions of the assessment are inconsistent with those two opinions.

Dr. Coder evaluated McClellan in March 2014 and found that McClellan's ability to repeat only four of eight digits forward and three of six digits backward indicated that McClellan's immediate and working memory were below normal limits. (Tr. 420.) But the normal range is six forward and four backward. (*Id.*) Dr. Coder thought that McClellan's "attention and basic verbal fluency" were below the normal range. (*Id.*) But Dr. Coder also found that McClellan "demonstrated ability to understand and follow directions within the normal range." (*Id.*) McClellan could also repeatedly subtract seven starting from 100 within normal limits, which, according to Dr. Coder, indicated the ability to persist at a task. (*Id.*)

---

[2] The Magistrate Judge indicated that Coder was a psychiatrist, but a psychiatrist has a medical degree (M.D. or D.O.), *see* American Psychiatric Association, What is Psychiatry? *available at* http://www.psychiatry.org/patients-families/what-is-psychiatry (last visited Mar. 26, 2017), whereas Coder has a Ph.D. (Tr. 425).

As for Dr. Goler, he did opine that McClellan's TBI or PTSD (or both) impacted his ability to work (Tr. 683), that McClellan had "cognitive impairment" (Tr. 676), and that McClellan's "[h]eadaches preclude[d] work on a daily basis" (Tr. 680). But it appears that the only objective testing Dr. Goler performed was the Montreal Cognitive Assessment, "a rapid screening instrument for *mild* cognitive dysfunction," U.S. Dept. of Veterans Affairs, *Parkinson's Disease Research, Education and Clinical Centers, Montreal Cognitive Assessment (MoCA)*, *available at* http://www.parkinsons.va.gov/consortium/moca.asp (last visited Mar. 26, 2017). Further, certain aspects of Dr. Goler's assessment are questionable, including his suggestion that McClellan's judgment was so poor that he would have difficulty with a task akin to picking out weather-appropriate clothing and that McClellan's visual-spatial orientation was so impaired that he would have trouble with a task like touching his own body parts. (Tr. 679–80.)

As for Laffy's speech-language evaluation, it is true that his testing revealed McClellan's recall to be at the 45th percentile of all brain-injured patients and reasoning at the 50th percentile of all such patients. (Tr. 1018.) But Laffy's "assessment" was "mild to moderate cognitive communication disorder" that, with therapy, stood a good chance for improvement. (*Id.*)

Dr. West performed the most extensive objective testing. (*See* Tr. 1008 (listing battery of tests).) But her results are also mixed; in Dr. West's words, "[McClellan's] cognitive profile was quite variable." (Tr. 1008.) She found that McClellan's verbal reasoning and comprehension were in the low-average range, his phonemic verbal fluency was moderately impaired, his semantic verbal fluency was "severely" impaired, and certain processing-speed tasks were "severely" impaired. (Tr. 1009.) But she also found that McClellan's nonverbal reasoning was in the average range, "his basic attention and working memory were average," and that McClellan

9

had particular strengths in "mental set shifting, problem solving, and concept formation." (Tr. 1009.) Her "diagnostic considerations" were "mild neurocognitive disorder" (and PTSD and depression "by history"). (*Id.*)

Dr. Coder's, Dr. Goler's, Dr. West's, and Laffy's assessments undoubtedly indicate cognitive impairment and thus, as the Magistrate Judge found, lend support to the opinions of Dr. Hasegawa and Porta and Dr. Zatolokin. But Dr. Coder's test results were mixed, Dr. Goler apparently only performed a test for mild cognitive impairment, Laffy assessed "mild to moderate cognitive communication disorder," and Dr. West diagnosed "mild neurocognitive disorder." As such, their assessments are arguably inconsistent with complete disability as indicated by Hasegawa and some of the most severe functional limitations identified by Porta and Dr. Zatolokin. The Court thus declines to find that these four assessments would render the ALJ's rejection of the Hasegawa and Porta-Zatolokin opinions unreasonable. *See Blakley*, 581 F.3d at 406 ("[I]f substantial evidence supports the ALJ's decision, this Court defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion." (internal quotation marks omitted)).

Finally, the Magistrate Judge discounted the fraud-investigation report. (R. 17, PID 1138.) It is true that the investigative findings that McClellan followed directions to find an item in Home Depot (Tr. 861), remembered part of a phone conversation from three weeks earlier (Tr. 860), noticed that a fax number he was provided over the phone differed by only one digit from the number he had called (Tr. 86), and played Blackjack at a casino (Tr. 863) do not strongly support a finding that McClellan had the cognitive ability to perform work on a *sustained* basis. *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th Cir. 2013) ("The record, according to the ALJ, is clear that Gayheart's 'alleged anxiety has not prevented him from leaving home,

10

driving, keeping medical appointments, visiting friends and neighbors, shopping with his wife, and attending three hearings.' . . . But the ALJ does not contend, and the record does not suggest, that Gayheart could do any of these activities on a *sustained basis*, which is how the functional limitations of mental impairments are to be assessed."). On the other hand, the Magistrate Judge indicated that one of the problems with the ALJ's reliance on the fraud-investigation report was that the investigation was only "over a very brief period of time" and McClellan may have been functioning particularly well during that time. (*See* R. 17, PID 1138.) This certainly may be true, and the ALJ should have considered that possibility. But the mere possibility that the investigation did not give an accurate picture of McClellan's functioning does not mean the ALJ was unreasonable in thinking that it did. *See Blakley*, 581 F.3d at 406.

In short, the Court declines to adopt the Magistrate Judge's finding that the ALJ's assignment of little weight to the Hasegawa and Porta-Zatolokin opinions lacked substantial evidentiary support.

**B.**

The Magistrate Judge alternatively recommends remand on the basis that the ALJ failed to provide an adequate explanation for rejecting the Hasegawa and Porta-Zatolokin opinions. (R. 17, PID 1138 n.4, 1146, 1147–48.) The Court accepts this recommendation in part.

Even when substantial evidence supports an ALJ's rejection of a treating-source opinion, remand is still warranted if a claimant (or a reviewing court) cannot understand *why* the ALJ rejected the opinion. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). In other words, it is not enough that a reviewing court or the Commissioner on appeal can identify sound evidentiary bases for rejecting a treating-source opinion—*ALJs* must set out *their* bases in *their* narrative. *See id.* ("A Social Security Ruling explains that . . . a decision denying benefits

11

must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." (internal quotation marks omitted)). This is known as the "good reasons" aspect of the treating-source rule and it "exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Id.* (internal quotation marks omitted)).

Upon a careful review of the ALJ's narrative, the Court does not believe that McClellan (or, objectively, a reasonably-competent claimant in his position) would understand why the ALJ rejected the opinion of Dr. Hasegawa. The treating neurologist had seen McClellan four times over six months (Tr. 928, 946, 951, 1025) and, as noted, increased McClellan's medications on at least three of those occasions (Tr. 929, 946, 951). The ALJ did not acknowledge either of these facts anywhere in her narrative. In fact, the entirety of her analysis of Dr. Hasegawa's opinion was as follows: "On May 29, 2015, neurologist Hisanori Hasegawa, M.D., opined that Mr. McClellan was clinically disabled by headaches, possible seizure, anger, and closed head injury. (exh. 8F, pp. 7-8) I accord Dr. Hasegawa's opinion little weight because it is inconsistent with the record as a whole." (Tr. 24.) A mere statement that a treating-source opinion "is inconsistent with the record as a whole" does not comply with the "good-reasons" requirement of the treating-source rule. *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th Cir. 2013) (finding that ALJ's assignment of "little weight" to a treating-source opinion along with an explanation that the opinion was "not well-supported by any objective findings" and was

"inconsistent with other credible evidence" did not comply with the good-reasons requirement); *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 552 (6th Cir. 2010) ("Put simply, it is not enough to dismiss a treating physician's opinion as 'incompatible' with other evidence of record; there must be some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion that gets the short end of the stick."). Indeed, it is not even clear that the ALJ knew that Dr. Hasegawa qualified as a treating source.[3]

---

[3] Although the Commissioner does not make the argument, it is not apparent that the explanatory aspect of the treating-source rule applies with the same force when, as here, the treating-source opines on an issue reserved to the Commissioner. The regulation at the heart of the explanatory requirement says, "We will always give good reasons in our notice of determination or decision for the weight we give your treating source's *medical opinion*." 20 C.F.R. § 404.1527(c)(2) (emphasis added). Another paragraph of that very regulation, paragraph (a)(1), defines "medical opinion." And—critically—a third subsection of that same regulation states, "Opinions on some issues, such as the examples that follow, *are not medical opinions, as described in paragraph (a)(1) of this section*, but are, instead, opinions on issues reserved to the Commissioner . . . . (1) *Opinions that you are disabled. . . .*" 20 C.F.R. § 404.1527(d) (emphases added). Thus, an argument could be made that the "good reasons" requirement of § 404.1527(c)(2)—which applies to "medical opinions"—does not apply to a treating source's opinion that a claimant is "disabled." *See also Saulic v. Colvin*, No. 5:12CV2753, 2013 WL 5234243, at *9 (N.D. Ohio Sept. 16, 2013) (explaining that when a treating-source opines on an issue reserved to the Commissioner, an ALJ must still "explain why such an opinion has not been followed," but "such explanation need not be as exacting as the 'good reasons' rule regarding the medical opinions of treating physicians contained in 20 CFR § 404.1527(c)(2)").

On the other hand, the Sixth Circuit has said, "While controlling weight will not be provided to a treating physician's opinion on an issue reserved to the Commissioner, the ALJ still must 'explain the consideration given to the treating source's opinion(s).'" *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007) (quoting S.S.R. 96–5: Policy Interpretation Ruling Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner, 61 Fed. Reg. 34471, 34474 (Soc. Sec. Admin. July 2, 1996)). And some Sixth Circuit opinions suggest that the case law surrounding the "good reasons" requirement of § 404.1527(c)(2) applies even when the treating source merely opines that the claimant was "disabled." *See Dutkiewicz v. Comm'r of Soc. Sec.*, 663 F. App'x 430, 432 (6th Cir. 2016); *Kidd v. Comm'r of Soc. Sec.*, 283 F. App'x 336, 341 (6th Cir. 2008); *Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 490 (6th Cir. 2005). This makes some sense as one of the primary rationales for the good-reasons requirement is to avoid the situation where "a claimant knows that his physician has deemed him disabled" and would be "bewildered" that an ALJ thought otherwise absent an explanation from the ALJ. *Wilson*, 378 F.3d at 544.

As the Commissioner does not address the issue, the Court leaves it for another day.

The ALJ said more regarding the Porta-Zatolokin opinion. In particular, she explained that Dr. West had administered objective testing that "demonstrated far fewer and less severe impairments" than those indicated by Porta and Dr. Zatolokin. (Tr. 25.) The ALJ also provided that Porta and Dr. Zatolokin's severe limitations, including the inability to remember and understand very short and simple instructions, were undermined by the fraud investigation, including McClellan's ability to "gamble at multiple casinos, pay attention to detail, and follow instructions." (R. 25.) Elsewhere in her narrative, the ALJ explained that while McClellan told Porta that he could not remember their discussions at prior therapy sessions, this was contradicted by the finding in the fraud-investigation report that McClellan could remember part of a three-week-old phone conversation. (R. 23.) The ALJ also explained that McClellan routinely answered "Extreme" to the PCL-C questions, but, according to the investigation report, McClellan was able to shop, attend sporting events, socialize at a water park, and go to restaurants. (R. 22.)

The foregoing probably satisfies the ALJ's obligation to provide McClellan with good reasons for rejecting the Porta-Zatolokin opinion. Still, the Court is concerned that the ALJ did not acknowledge the length of McClellan's treating relationship with Porta and Dr. Zatolokin nor did she acknowledge the fact that Dr. Zatolokin routinely increased McClellan's psychological medications, which, as noted, were many. Additionally, while a number of Dr. West's findings were arguably not consistent with the extreme limitations in the Porta-Zatolokin opinion, the ALJ said nothing about Dr. West's findings of "severe[]" impairments in semantic verbal fluency and certain processing-speed tasks. (*See* Tr. 22, 24, 1009.)

Where, as here, an ALJ fails to comply with the explanatory aspect of the treating-source rule, remand is the normal course. *See Wiser v. Comm'r of Soc. Sec.*, 627 F. App'x 523, 526 (6th

14

Cir. 2015). But sometimes remand is unnecessary. *See id.* In *Wilson*, the Sixth Circuit hypothesized scenarios where an ALJ's failure to comply with the "good reasons" requirement might be harmless: (1) "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it"; (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion"; or (3) "where the Commissioner has met the goal of § 1527(d)(2)—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Wilson*, 378 F.3d at 547; *see also Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 474–75 (6th Cir. 2016) (applying *Wilson*'s first exception); *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006) (applying *Wilson*'s third exception).

While close, the Court does not believe that Dr. Hasegawa's opinion is "so patently deficient that the Commissioner could not possibly credit it." True, as discussed, Dr. Hasegawa opined on the legal issue of disability and seemed to adopt McClellan's self-assessment of his ability to function. But, significantly, Dr. Hasegawa was aware of the EEG test results, believed McClellan's condition was severe enough to regularly increase his medications, and thought that McClellan's impairments warranted a speech-language evaluation. Further, as discussed, some of the objective testing could be interpreted to support Dr. Hasegawa's opinion. While there may well be good reasons to reject Dr. Hasegawa's opinion, it is not impossible to credit.

While also debatable, the Court declines to find that the ALJ met the goal of the explanatory requirement by indirectly explaining why Dr. Hasegawa's opinion was entitled to little weight. Elsewhere in her narrative, the ALJ did reasonably conclude that McClellan did not have a traumatic brain injury. (*See* Tr. 17, 764, 1042.) And TBI was a basis for Dr. Hasegawa's opinion. (*See* Tr. 928–29.) Elsewhere in her narrative, the ALJ questioned McClellan's claim

15

that he had prostrating headaches given that McClellan had lived with the condition for some time before seeking medication. (Tr. 24, 674.)  And headaches were a basis for Dr. Hasegawa's opinion. (*See* Tr. 928–29.) Dr. Hasegawa also indicated mood swings as a basis for his opinion, but, as discussed, the ALJ gave reasons for rejecting the psychological-based opinion completed by Porta and Dr. Zatolokin. Thus, a fair argument could be made that even if the ALJ did not comply with the letter of the explanatory requirement, she complied with its purpose. The Court declines to make this finding, however, because while this Court might be able to connect various parts of the ALJ's narrative, it is not apparent that McClellan could.

Still, if all that was problematic about the ALJ's narrative was her treatment of Dr. Hasegawa's opinion, the Court might hesitate to remand. But the Court also finds problematic the ALJ's treatment of the VA's rating. The VA provided that if McClellan's cognitive deficiencies were solely attributable to his PTSD and depression, he would have received a 70% disability rating. (Tr. 369.) And, it appears, the primary basis for this rating was Dr. Coder's assessment. (*See* Tr. 366.) Likely because Dr. Coder's assessment was not strictly an opinion (it provided no functional limitations), the ALJ did not say whether she found his assessment credible. (*See* Tr. 21.) But without a determination by the ALJ that Dr. Coder's assessment was not credible or uninformative, it is not immediately apparent why the ALJ rejected the VA's disability rating based on that very assessment.

In her objections, the Commissioner points out that the ALJ stated she was rejecting the VA's rating because "the record does not support a finding of disabled." (R. 18, PID 1160–61.) This is true. (Tr. 24.) And from this statement the Court can infer that the ALJ was referring primarily to Dr. West's assessment and the fraud-investigation report. The problem with this

16

argument, however, is that it is not apparent how Dr. Coder's assessment is inconsistent with Dr. West's assessment and the fraud-investigation report.

In short, although the Court imposes no general explanation requirement, in this particular case the ALJ should have explained further why she was rejecting the VA's rating. *See Honorable v. Commissioner of Social Security*, No. 15-CV-10190, 2015 WL 9469985, at *8 (Nov. 19, 2015) ("Several district courts within the Sixth Circuit have indicated that the ALJ must assign some weight to the VA's decision and articulate her reasons for the weight given."), *report and recommendation adopted*, 2015 WL 9459916 (E.D. Mich. Dec. 28, 2015).

## IV.

For the foregoing reasons, the Court declines to adopt the Magistrate Judge's finding that substantial evidence does not support the ALJ's assignment of "little weight" to the opinions of Dr. Hasegawa and Porta and Dr. Zatolokin. But the Court agrees with the Magistrate Judge's finding that the ALJ did not fully comply with the explanatory aspect of the treating-source rule in assigning "little weight" to Dr. Hasegawa's opinion and that the ALJ should have given a more complete explanation for assigning "little weight" to the VA's disability rating. On remand, the ALJ should further explain why Dr. Hasegawa's opinion and the VA's disability rating were effectively rejected. In doing so, the ALJ may, but is not required to, assign greater weight to Dr. Hasegawa's opinion or Porta and Dr. Zatolokin's opinion for the reasons set forth in the Magistrate Judge's opinion. (*See* R. 17.) This case is hereby REMANDED pursuant to the fourth sentence of 42 U.S.C. § 405(g).

SO ORDERED.

                                                    s/Laurie J. Michelson
                                                    LAURIE J. MICHELSON
Dated: March 30, 2017                    U.S. DISTRICT JUDGE

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 30, 2017.

s/Keisha Jackson
Case Manager
